UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARIO A. CORONADO, § | |
|    Plaintiff § | |
| § | |
| vs. § | CIVIL ACTION NO. C-04-313 |
| § | |
| JOHN E. POTTER, POSTMASTER § | |
| GENERAL, UNITED STATES POSTAL § | |
| SERVICE, § | |
|    Defendant § | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") on June 14, 2004, alleging that his employer, the United States Postal Service ("USPS"), retaliated against him for having filed an earlier charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Defendant filed a motion for summary judgment on May 23, 2005 to which plaintiff responded on June 16, 2005 (D.E. 15).  Defendant filed a motion to strike portions of plaintiff's affidavit and filed a reply to the response for summary judgment on July 2, 2005 (D.E. 16, 17).

### BACKGROUND

The following facts are taken from the pleadings and exhibits submitted in this case and have been construed in the light most favorable to plaintiff.  Plaintiff is a 41-year-old Hispanic man who has worked with the USPS as a letter carrier since August 27, 1987 (D.E. 1, pp. 1, 3).  In July 2000, while working at the Lamar Park post office, plaintiff complained to defendant that he was being discriminated against on the basis of his race.  Defendant attempted to remove plaintiff from his position, but ultimately he was transferred to the Portairs post office, where he worked under the supervision of Patricia Casanova.  During his first week at the Portairs station, Casanova told plaintiff that she knew he had filed grievances and complaints of discrimination at the Lamar Park

station and she did not want any problems at the Port Ayers station (D.E. 1, p. 3). Casanova ridiculed and harassed plaintiff, and arranged for him to be followed on his regular mail routes and to be watched by her and other supervisory personnel. In furtherance of the retaliation against plaintiff, he was given a letter of removal on August 27, 2001 and told to report to work the next day as a clerk rather than a letter carrier. Plaintiff was humiliated by the demotion and subsequently was terminated on September 27, 2001 (D.E. 1, p. 4).

Plaintiff sought reinstatement by pursuing several levels of administrative relief, but ultimately was denied reinstatement on December 10, 2002 (D.E. 13, Ex. G). Plaintiff also filed an EEOC charge and the Office of Federal Operations ultimately affirmed the agency decision on March 10, 2004. Coronado v. Potter, 2004 WL 555008 (E.E.O.C.).

In its motion for summary judgment defendant argues that plaintiff failed to make out a prima facie case of discrimination and that even if he did so, he cannot overcome the defendant's legitimate, non-discriminatory reason for not hiring him. Plaintiff responds that the evidence in the case shows that plaintiff was the victim of a well-orchestrated scheme to remove him from his position as a letter carrier, administered in retaliation for his having filed an EEO claim.

## APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED.R.CIV.P. 56(c). An issue is material if its resolution could affect the outcome of the action. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct.

2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Caboni, 278 F.3d at 451; FED.R.CIV.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Caboni, 278 F.3d at 451.

**B. Title VII**

Plaintiff claims his employer retaliated against him after he filed an EEOC complaint, which is unlawful under 42 U.S.C. § 2000e-3(a). A plaintiff must show three things to establish a prima facie case of retaliation: (1) that he engaged in an activity protected by Title VII; (2) that an adverse employment action followed, and (3) that there was a causal connection between the activity and the adverse action. Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190, 193 (5th Cir. 1991)(citing Jones v. Flagship International, 793 F.2d 714, 724 (5th Cir. 1987)), cert. denied, 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992). The plaintiff need not establish that his protected

activity was the sole factor motivating his mistreatment, but must show that "but for" the protected activity he would not have been subjected to the action which he claims. Collins, 937 F.2d at 193 (citing Jack v. Texaco Research Center, 743 F.2d 1129, 1131 (5th Cir. 1984)).

If plaintiff makes out a prima facie case, the burden shifts to defendant to show that plaintiff's termination was based on a legitimate, non-discriminatory reason. Perez v. Region 20 Education Service Center, 307 F.3d 318, 324-325 (5th Cir. 2002). If the employer articulates a non-discriminatory reason for plaintiff's termination, plaintiff must then show that defendant did intentionally discriminate, which he may do by demonstrating that the employer's reason for termination was a pretext for discrimination. Id., 307 F.3d at 324. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may, but does not necessarily, permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id., 530 U.S. at 148-149, 120 S.Ct. at 2109.

In addition, in order for retaliation to be actionable, it must affect an ultimate employment decision. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995)(citing Page v. Bolger, 645 F.2d 227, 233(4th Cir.)(en banc)), cert. denied, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)). Ultimate employment decisions include such things as hiring, granting leave, discharging, promoting, and

compensating. Id. at 782. Hostility from fellow employees, verbal threats of being fired, verbal reprimands, a missed pay increase, undesirable work assignments and being placed on "final warning" do not constitute adverse employment actions because of their lack of consequence. Mattern v. Eastman Kodak Co., 104 F.3d 702, 707-708 (5th Cir. 1997), cert. denied, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997).

### 1. Prima Facie Case

Defendant concedes that plaintiff engaged in protected activity and suffered an adverse employment action when he was removed from his letter carrier position, but denies that there was a causal connection between his filing of the EEO claim and his ultimate termination. Plaintiff argues that he filed EEO complaints on May 11, 2001 and May 23, 2001 complaining that Casanova was retaliating against him because he had filed EEO complaints while at Lamar Park and that she continued to retaliate against him and ultimately removed him on August 27, 2001. Looking at the evidence in the light most favorable to plaintiff, he has made out a prima facie case of retaliation.

### 2. Legitimate Nondiscriminatory Reason

Defendant argues that it terminated plaintiff because he failed to comply with USPS directives, failed to follow the instructions of his supervisors, failed to perform his duties in a satisfactory manner and failed to answer his supervisor's questions during an investigation. Casanova, plaintiff's supervisor at the Portairs station, submitted an affidavit explaining why she decided to remove plaintiff from his letter carrier position.

Casanova stated that in October 2000 plaintiff voluntarily transferred from the Lamar Park station to the Portairs station. Based on seniority, plaintiff was awarded route 1535 (Coronado Aff., D.E. 13, Ex. H, p. 5). Casanova showed plaintiff around the station, explained the carrier duties and

expectations and instructed plaintiff to review the carrier route book, the authorized break and lunch time locations and the park points, swing and break locations. Plaintiff told Casanova that the supervisors at Lamar Park did not like him and Casanova told him she would be fair and that she expected him to perform his duties like the other carriers. If she saw anything that needed correcting, she would meet with plaintiff either alone or with the union steward to address the problem (Casanova Aff., D.E. 13, Ex. H, p. 6).

Plaintiff explained to Casanova that he was not on the "Overtime Desired" list and she told him that she would notify the Union Steward when she needed to use the non-overtime list personnel to complete delivery of the mail. He also asked her if he could leave by 4:30 or 5:00 p.m. on Wednesdays to bowl and Casanova agreed to work with him on that (Casanova Aff., D.E. 13, Ex. H, p. 6).

While working route 1535 plaintiff did not complete it by 5 p.m. and during October and November 2000 he failed to estimate his workload. Casanova had several discussions with plaintiff about his deviations from his break and lunch locations and line of travel. He returned late on a daily basis, causing him to work unauthorized overtime (Casanova Aff., D.E. 13, Ex. H, pp. 6-7).

The authorized break and lunch location for Route 1535 was a Popeye's restaurant on the corner of Weber and Gollihar, but plaintiff would go to Sylvia's restaurant on Gollihar, where he would eat with friends from the Lamar Park station. Plaintiff also took breaks at a hospital across from route 1535 which was contrary to Casanova's instructions. Casanova had a discussion with plaintiff and the union steward and she explained that he was not supposed to cross Weber because of safety and time constraints (Casanova Aff., D.E. 13, Ex. H, p. 7).

Nevertheless, plaintiff continued to eat lunch at Sylvia's and take breaks at the hospital. Casanova conducted an investigative interview with plaintiff and union steward Herby Garza, but

6

plaintiff answered "no comment" to most of the questions. Plaintiff also explained that he thought he could eat wherever he wanted. Casanova told him that because he was using a USPS vehicle and gasoline, he had to eat at the authorized break location, which was Popeye's (Casanova Aff., D.E. 13, Ex. H, p. 7).

In November 2000 plaintiff voluntarily changed to route 1528, which had a lighter volume and fewer residential deliveries. At the Portairs station during the holidays, mail volume drops while there is a slight increase in parcels, but even with less mail, plaintiff continued to leave to go to the route late. Casanova would try to assist him by authorizing 10 or 15 minutes more than was indicated by the volume workload tools, but nevertheless, plaintiff could not estimate his leave time or street time at all (Casanova Aff., D.E. 13, Ex. H, p. 7).

On plaintiff's first day on route 1528, a supervisor accompanied him to point out his stops on the business delivery for the first hour of delivery. The supervisor also explained the park points and drove the route with plaintiff that day. Casanova also made available the previous carrier for route 1528 to answer any of plaintiff's questions. Plaintiff did not improve either his office time or street time and asked for help on the route on a daily basis, regardless of the workload (Casanova Aff., D.E. 13, Ex. H, p. 8).

In December 2000 Casanova conduced a proficiency check with plaintiff in the office and on the street on route 1528 and noted that he curtailed and delayed parcels without authorization. Casanova issued plaintiff a notice of proposed removal that later was reduced to a 60-day suspension (Casanova Aff., D.E. 13, Ex. H, p. 8). From December 2000 through June 2001 Casanova had several discussions with plaintiff about his failure to follow instructions, deviating from his prescribed line of travel, break and lunch locations, working unauthorized overtime and his failure to properly complete PS Form 3996 (Casanova Aff., D.E. 13, Ex. H, p. 9).

Casanova conducted a partial proficiency check in May 2001 and noted that plaintiff deviated from his break location again. She informed plaintiff and the union that an office and street proficiency check would be scheduled for June 22, 2001. On that day, for the first time ever, plaintiff carried his entire route in a total of eight hours and eight minutes, although he had submitted a form asking for 30 minutes of assistance. Plaintiff had delivered only 267 letter pieces and 134 flat pieces and was over standard office time by four minutes with the light workload (Casanova Aff., D.E. 13, Ex. H, p. 9).

Ray Garcia, the supervisor who performed the proficiency check, noted a total of 56 minutes and 42 seconds of time wasted by plaintiff. Even so, plaintiff was able to finish the route in an almost timely manner, when in the previous six months he had been unable to complete the route in a timely manner (Casanova Aff., D.E. 13, Ex. H, p. 9).

Although plaintiff had been delivering on route 1528 for six months, he still appeared unfamiliar with the route and could not give a proper estimate even when he could see that he had only three feet of caseable mail. He would stare at mail pieces for three or four seconds before finding the corresponding address and then would "double pump" the piece before finalizing into the proper separation (Casanova Aff., D.E. 13, Ex. H, p. 9).

Casanova interviewed plaintiff about the time-wasting practices observed on June 22, 2001 and asked him 24 questions, to which he responded "I take the Fifth" 14 times and "I don't remember" 5 times. He gave only partial answers to the rest of the questions Casanova asked (Casanova Aff., D.E. 13, Ex. H, p. 9).

In her affidavit Casanova commented that when plaintiff was at the Lamar Park station it was noted that he took unauthorized breaks, deviated from his line of travel and expanded his street time. He also answered "no comment" when questioned about his practices and even when he was

8

accompanied by a supervisor he demonstrated a blatant disregard for rules, procedures and instructions (Casanova Aff., D.E. 13, Ex. H, p. 10).

Casanova's assertions are corroborated by the notice of removal plaintiff was issued on August 27, 2001 and also by the decision of the arbitrator who held the hearing on the grievance plaintiff filed after he was terminated (D.E. 13, Exs. F and G). The allegations regarding plaintiff's poor performance support defendant's allegation that plaintiff was terminated for a legitimate, non-discriminatory reason. The burden shifts to plaintiff to provide evidence that the reason given was a pretext.

### 3. Evidence of Pretext

In his response to the motion for summary judgment plaintiff argues that other carriers took as long as he did to deliver the mail on route 1528 and he refers to a document which he claims supports his position. Plaintiff states that the document is an eight-week analysis that represents both the time used by him and the time used by other carriers on the route, but that is not clear from reading the document. (D.E. 15, Ex. A). The document does not identify any postal worker and although it appears to list time spent by a carrier in the office and on the street, no further explanation is given regarding its significance. Also the document is unverified.

Moreover, plaintiff's explanation of the document is unclear. He states that he was assigned to route 1528 in November 2000 but later states "[I]n none of the periods identified from November 11, 2000 to June 22, 2001, I did not carry the route by myself. Instead, other letter carriers walked the route." (Coronado Aff., D.E. 15, Ex. I, pp. 1-2). In the same paragraph, plaintiff stated:

> Other carriers who delivered the entire route 1528 did no better than me for the corresponding period. I routinely requested auxiliary assistance because of the additional time that was needed to complete the route beyond an eight hour period. The route is overburden[ed] by at least an hour and I did not engage in time-wasting practices to complete the route. Nonetheless, after a month, I was assigned to carry route 1528.

9

(Coronado Aff., D.E. 15, Ex. I, p. 2). Plaintiff's meaning is unclear because he first describes his work on route 1528, then states that he was assigned to the route "after a month." The document submitted by plaintiff, without verification or further explanation, does not support his allegation that all carriers on route 1528 took the same amount of time to finish the route.

Plaintiff also takes issue with the fact that Casanova arranged to do the mail count on plaintiff's route on June 22, 2001 because it was contrary to the USPS handbook which provides that mail counts should be conducted between the first week of September and May 31, excluding December. He claims that she initiated the mail count in retaliation for his earlier EEO complaints against her. He also alleges that Casanova failed to perform a follow-up check within 48 hours of the June 22, 2001 street inspection as contemplated by an earlier agreement with the postal service made on December 19, 2000 (Coronado Aff., D.E. 15, Ex. I, p. 3).

Assuming this allegation is true, it still does not present a relevant fact issue. Defendant argues that plaintiff was terminated because he wasted time, both in the office and on the street, because he did not follow instructions regarding the route he was supposed to drive and the locations where he was supposed to take his breaks and because he was uncooperative when questioned about his practices on the route. Even if the mail count was done at an inappropriate time, it does show that the conclusions of the count were a pretext for discrimination.

Finally, plaintiff complains that Casanova failed to follow another USPS handbook regarding mail counts and route inspections which says that carriers shall not be disciplined for failure to meet standards, except in cases of unsatisfactory effort which must be based on documented, unacceptable conduct that led to the carrier's failure to meet office standards (Coronado Aff., D.E. 15, Ex. I, p. 3). Plaintiff's allegation does not present a fact issue which would preclude summary judgment because defendant did document plaintiff's unacceptable conduct.

**C. Motion to Strike**

In defendant's motion to strike, the USPS argues that portions of plaintiff's affidavit attached to his response to the motion for summary judgment should be struck because they do not comply with the requirements of FED. R. CIV. P. 56(e). To the extent statements in the affidavit are not competent summary judgment evidence, they have not been given any weight. Accordingly, striking them would serve no purpose and defendant's motion is denied.

## CONCLUSION

Because plaintiff has failed to raise a fact issue on whether defendant's legitimate, non-discriminatory reason was a pretext for discrimination, defendant's motion for summary judgment (D.E. 13) is granted and plaintiff's cause of action is dismissed with prejudice in its entirety. Defendant's motion to strike (D.E. 16) is denied.

ORDERED this 7th day of July, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

11